MINNEAPOLIS TRUST COMPANY, Receiver, *vs.* W. B. CLARK, impleaded, etc.

August 18, 1891.

Corporation—President held Chargeable on Note Indorsed to Company.—At the time of the organization of the W. B. C. Investment Co., insolvent, of which plaintiff is receiver and the defendant was president and manager, the latter had indorsed several notes then outstanding, and held and owned by eastern capitalists, and which had not yet matured. Upon their maturity they were sent to the company for collection, and through defendant's agency renewed by the maker, and again indorsed by him individually, turned over to investment company, which had paid the first notes, and again negotiated by the latter. The notes were dishonored and protested at maturity, and again taken up by the company. *Held*, that defendant was properly charged as indorser, and liable to the plaintiff in this action.

Same—Agreement by Company to Indemnify Indorser—Evidence.— Evidence *held* insufficient to show that the company had agreed to indemnify the defendant from liability as indorser upon outstanding notes negotiated by him.

Appeal by defendant Clark (impleaded with R. L. Kelly) from an order of the district court for Hennepin county, *Lochren*, J., presiding, refusing a new trial after verdict of $3,184.78 for plaintiff.

*Hart & Brewer*, for appellant.

*Cobb & Wheelwright*, for respondent.

VANDERBURGH, J. This action is brought upon certain promissory notes made by R. L. Kelly to the defendant, W. B. Clark, and by him indorsed to the "W. B. Clark Investment Company," the plain-

tiff's assignor. It is sought to hold Clark liable on his indorsement. The defence is, in substance that the notes were made for the company in renewal of other notes held by it, and that the indorsement was made without consideration, in the course of his agency as an officer of the company, and that the notes were not negotiated or sold to the company, but merely turned over by him to the company as the beneficial owner thereof. Upon a review of the evidence in this case, we think this defence is not sustained, and that the court was right in directing a verdict for the plaintiff.

1. Prior to February 1, 1888, the defendant, W. B. Clark, was engaged in loaning money in the city of Minneapolis, upon notes and mortgages which were negotiated or sold by him to eastern bankers or capitalists, or discounted by them. At or about that date, the W. B. Clark Investment Company, of which he was the manager and head, and chief stockholder, (having a majority of all the stock,) was organized for the purpose of carrying on the same business. The capital stock was $200,000, and according to his testimony he received $50,000 of the stock for the good-will of his business, and $60,000 for assets turned over to the company. The company commenced business about February 10th the same year, and the defendant Clark appears to have had the entire control and direction of its business and affairs. Prior to that date Kelly had executed notes to Clark, which he had indorsed to eastern parties, which matured February 28, 1888, and upon which, we may assume, he was liable by virtue of his indorsement. These notes were then outstanding and not due when the company commenced business, and were forwarded for collection, and, not being paid by Kelly, Clark, as president of the company, advanced the money to pay the same from the funds of the company, and took renewal notes indorsed by him for the amount thereof from Kelly, which he negotiated, and in due time these notes were returned, and the notes in suit, indorsed by him in the same way, were given in renewal thereof, negotiated to eastern parties, were dishonored and protested, again taken up by the company, and were afterwards, by Clark's direction, charged to profit and loss on its books. The result of the transaction was to throw the entire loss upon the company, arising from the non-pay-

ment of the original notes, and to exempt him from liability thereon; and the question here is whether, by reason of his connection with the company as its president and manager, his indorsement is to be treated as merely a formal transfer of the company's paper, or whether he is liable thereon.

In respect to the original notes, the defendant testified: "As a matter of fact, those Kelly notes were outstanding at the time with my indorsement, sold to eastern parties," referring to the organization of the company. The holders were the sole owners, and were entitled to enforce the collection thereof. They were not part of the assets purchased by the investment company, and had no legitimate connection with the business of the company, save as an agency for collection. The assumption of the individual liability of Clark upon outstanding paper in the hands of parties who had purchased the same cannot be considered as a part of the business to which the company succeeded. In the absence of a valid agreement to do so, the company was not bound to indemnify or protect him from his individual liability on the notes. On the contrary, if he applied the money of the company for that purpose, it was his duty to protect the company against loss or liability for the debt, which was still evidenced by the new notes, which served to keep the transaction separate. And this duty the defendant practically recognized and fulfilled by becoming first indorser on such notes; and this obligation was sufficient consideration for the indorsement, as between the company and him. He testified that the notes were made payable to himself, and he indorsed them, and transferred them to the company. His indorsement was his own personal act, and not one in behalf of the company. He could not divest himself of the liability which legally attached to his indorsement without the sanction of the company, and in that matter he could not represent the company; and, of course, if the defendant did not represent the company in making the indorsement, and it was indorsed by him to the company in order to obtain credit for Kelly, that was also sufficient consideration to obligate him upon the note.

2. It is alleged in the answer that an agreement was entered into between the defendant Clark and the company, at the first meeting

of the board of directors, whereby the company agreed to assume and save the defendant harmless from all liability by reason of the indorsement of the original Kelly notes, and this agreement the defendant attempted to prove at the trial. The court held the evidence insufficient to establish that fact, and we think properly. The records of that meeting show no such thing. He simply testifies to the ultimate fact; that is to say, he says, "the agreement" was so. As a corporation can only act through authorized agents or officers, it should appear that the agreement alleged was authorized and made by the proper parties. It must appear how it was made. The reply denies that the corporation ever at any time agreed to assume and pay any of these liabilities, and the defendant was bound to show that a valid agreement to that effect was made as alleged, and this was not done. *Murray* v. *Nelson Lumber Co.*, 143 Mass. 250, (9 N. E. Rep. 634;) 4 Amer. & Eng. Enc. of Law, 247. We think the court ruled correctly in respect to the reception and rejection of evidence.

Order affirmed.